1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

PREMIER COMMUNITY BANK,

Plaintiff,

8

v.

9

FIRST AMERICAN TITLE
INSURANCE COMPANY,

10

Defendant.

11

CASE NO. C14-5776 BHS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

12
13
14
15
16
17
18

This matter comes before the Court on Plaintiff Premier Community Bank's
("Premier") motion for summary judgment (Dkt. 32) and Defendant First American Title
Insurance Company's ("First American") motion for summary judgment (Dkt. 38). The
Court has considered the pleadings filed in support of and in opposition to the motion and
the remainder of the file and hereby grants First American's motion and denies Premier's
motion for the reasons stated herein.

19

**I. PROCEDURAL HISTORY**

20
21
22

On June 6, 2014, Premier filed a complaint against First American in the United
States District Court for the District of Oregon.  Dkt. 5.  Premier asserts causes of action
for negligent misrepresentation, negligence, and breach of contract.  *Id.*

1    On September 30, 2014, the case was transferred to this district.  Dkt. 25.

2    On March 4, 2015, Premier filed a motion for summary judgment.  Dkt. 32.  On

3  April 30, First American filed a motion for summary judgment.  Dkt. 38.  On May 15,

4  2015, Premier responded.  Dkt. 40.  On May 18, 2015, First American responded.  Dkt.

5  41.  On May 22, 2015, both parties replied.  Dkts. 43 & 44.

6                              **II. FACTUAL BACKGROUND**

7    The parties agree "that the underlying material facts are few, and that those few

8  facts are undisputed."  Dkt. 40 at 1.  As such, this order recites First American's opening

9  statement of facts almost entirely.

10 **A.    The Property**

11    On February 28, 2008, Premier[1] entered into a commercial loan transaction with

12 customer Joe Sturtevant ("Sturtevant"), and his closely held affiliate entities.  Declaration

13 of Teruyuki Olsen ("Olsen Decl."), Exh. B.  Sturtevant borrowed $1,500,000.00 on a

14 one-year business line of credit in the name of his newly created entity, Trinity

15 Development, LLC ("Trinity").  *Id*., Exh. C at 61:7-16.  As part security for the loan, the

16 bank accepted a deed of trust on approximately eighteen acres of unimproved real

17 property located in Thurston County, Washington.  *Id*., Exh. B.  That property was owned

18 by a Washington limited liability company, Newman Park, LLC ("Newman Park").  *Id*.

19 Sturtevant's wholly owned LLC, Landmark Development Company, LLC was one of

20 twelve members in Newman Park and purported to be its Manager.

21 _____

22         [1] The actual lender was Columbia Community Bank, but in 2014 the bank changed its
name to Premier.  The Court will refer to Premier throughout this order.

1    Premier selected Clark County Title Company ("Clark County Title"), an

2   independent escrow company, to close the loan transaction.  Premier's escrow

3   instructions required Clark County Title to pay off an underlying 2004 Newman Park

4   loan and to remove the deed of trust securing that loan, and obtain a lender's title

5   insurance policy insuring that Premier had a first lien position on the Newman Park

6   property.  *Id.*, Exh. D. Clark County Title contacted Thurston County Title Company, an

7   authorized agent for Pacific Northwest Title Insurance Company ("PNWT"),[2] to issue a

8   title insurance policy.  On February 28, 2008, the loan closed.  The prior loan was paid

9   off and the related 2004 deed of trust was removed from record title as part of closing.

10   The date of the lender's title insurance policy is March 5, 2008.  *Id.*, Exh. A ("Policy").

11   The loan was not repaid at maturity. In late summer 2009, Premier initiated a non-judicial

12   foreclosure action.

13    In October 2009, Newman Park sued Premier in Clark County Superior Court for

14   the State of Washington requesting rescission of the loan-related promissory note and

15   cancellation of the deed of trust securing the loan.  *Id.*, Exh. E.  Newman Park alleged

16   that Newman Park had not authorized the loan or the conveyance of the deed of trust on

17   its Thurston County property.  *Id.*  Premier tendered the lawsuit to First American, and

18   First American accepted the tender.  The Clark County Superior Court dismissed the

19   action.  *Id.*, Exh. G.

20   _____

21    [2] On June 30, 2010, PNWT was merged into First American. As a result, First American

22   stands in the shoes of PNWT for purposes of this action and the subject policy.

1    On March 10, 2010, Newman again sued Premier in Thurston County Superior

2  Court for the State of Washington seeking declaratory relief on the validity of the deed of

3  trust and damages.  *Id.*, Exh. H.  On the same day, Premier filed a complaint in the same

4  court seeking a declaratory judgment to establish the validity of the deed of trust or, in

5  the alternative, a first position equitable lien under the Washington doctrine of equitable

6  subrogation.  *Id.*, Exh. I.  The actions were ultimately consolidated.

7    On cross-motions for summary judgment, the court found the subject deed of trust

8  was unenforceable for lack of an authorized signature, but found that Premier was

9  entitled to a first position equitable lien under the doctrine of equitable subrogation.  *Id.*,

10  Exh. J.  Newman Park appealed the decision.

11    While the appeal was pending, Premier initiated proceedings to foreclose the

12  equitable lien.  Newman Park moved to enjoin the sale, but the trial court denied

13  Newman Park's motion.  The court, however, allowed it to stay Premier's foreclosure

14  pending appeal upon the condition that Newman Park execute and deposit a quitclaim

15  deed granting title to the property to the Bank into the registry of the Court.  *Id.*, Exh. K.

16  The order staying the foreclosure proceedings further provided that upon return of a

17  mandate from the appellate court in favor of Premier, the deed was to be delivered to

18  Premier and the conveyance deemed effective and final.  *Id.*  Newman Park complied

19  with the court order and deposited the executed deed into the registry of the court.  *Id.*,

20  Exh. L.

21    Ultimately, whether the trial court's application of the equitable subrogation

22  doctrine was barred by the volunteer rule was decided by the Washington State Supreme

1   Court.  *Columbia Community Bank v. Newman Park, LLC*, 177 Wn.2d 566 (2013).

2   Following this decision the mandate was issued and the executed deed was delivered to

3   Premier.  Olsen Decl., Exhs. M–N.

4       Premier subsequently sold the Newman Park property to another Washington

5   resident.  Premier alleges in this action that the local market conditions declined during

6   the period of litigation which in turn caused Premier to suffer damages in the form of

7   diminution of fair market value.  Premier asserts that this diminution in market value is

8   covered by the First American lender's policy.  Premier also asserts that First American

9   delayed in litigating and securing insured interest for the Bank which also resulted in

10  damages.

11  **B.      The Policy**

12      The parties cite three particular provisions of the Policy in this case.  With regard

13  to coverage, the Policy provides in relevant part as follows:

14          Subject to the exclusions from coverage, the exceptions from
            coverage contained in Schedule B and the conditions and stipulations,
15      Pacific Northwest Title Company, Inc., a Washington corporation, . . .
        Insures, as of Date of Policy shown in Schedule A, against loss not
16      exceeding the amount of insurance stated in Schedule A, sustained or
        incurred by the insured by reason of:
17                                      ***
            (2) any defect in or lien or encumbrance; [or]
18                                      ***
            (5) the invalidity or unenforceability of the insured mortgage upon
19      title.

20  Policy at 1.  The "Determination and Extent of Liability" provision provides, in relevant

21  part, as follows:

22

> The liability of the Company under this policy shall not exceed . . . the difference between the value of the Insured estate or interest as Insured and the value of the Insured estate or Interest subject to the defect, lien or encumbrance insured against by this policy.

*Id.*, ¶ 7(a)(iii).  The "Limitation of Liability" provision provides, in relevant part, as follows:

> (a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as Insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
> (b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as Insured.

*Id.*, ¶ 8(a)-(b).

## III. DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

1   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

2   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

3   present specific, significant probative evidence, not simply "some metaphysical doubt").

4   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

5   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

6   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

7   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

8   626, 630 (9th Cir. 1987).

9         The determination of the existence of a material fact is often a close question.  The

10  Court must consider the substantive evidentiary burden that the nonmoving party must

11  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

12  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

13  issues of controversy in favor of the nonmoving party only when the facts specifically

14  attested by that party contradict facts specifically attested by the moving party.  The

15  nonmoving party may not merely state that it will discredit the moving party's evidence

16  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

17  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

18  nonspecific statements in affidavits are not sufficient, and missing facts will not be

19  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

20  **B.    Breach of Contract**

21        In Washington, "[t]he role of the court is to determine the mutual intentions of the

22  contracting parties according to the reasonable meaning of their words and acts."  *Fisher*

1    *Props., Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 837 (1986).  "A contract provision is

2    ambiguous when its terms are uncertain or when its terms are capable of being

3    understood as having more than one meaning."  *Mayer v. Pierce Cnty. Med. Bureau, Inc.*,

4    80 Wn. App. 416, 421 (1995).

5            Premier first argues that First American was unsuccessful in curing the defect in

6    the title because the Washington Court of Appeals held that the "deed of trust was . . .

7    invalid as a matter of law."  *Columbia Cmty. Bank v. Newman Park, LLC*, 166 Wn. App.

8    634, 646 (2012) *aff'd*, 177 Wn. 2d 566 (2013).  First American counters that, by securing

9    title for Premier, First American was discharged from all further obligations under the

10   Policy.  Dkt. 38 at 9.  First American has the better of this dispute.  The Policy provides

11   that if First American "establishes the title . . . by any method . . . [then] it shall have fully

12   performed its obligations with respect to that matter and shall not be liable for any loss or

13   damage caused thereby."  Policy, ¶ 8(a).  The language is unambiguous, and First

14   American obtained a quitclaim deed from Newman Park to Premier.  Olson Decl., Exh.

15   L.  Premier disputes the method by which First American obtained the quitclaim deed

16   and asserts that the "equitable lien was on a "Booby Prize" awarded to the losing party

17   for equitable reasons . . . ."  Dkt. 40 at 9.  Premier, however, agreed to "any method" of

18   establishing title whether by "Booby Prize," booby trap, years of litigation, or voluntary

19   conveyance pending an appellate decision.  As such, First American's contractual

20   obligation was performed and it "shall not be liable for any loss or damage caused

21   thereby."  Policy, ¶ 8(a).  Therefore, the Court grants First American's motion for

22   summary judgment and denies Premier's motion for summary judgment.

1      In the alternative, Premier argues that the Court should follow other courts that

2 have awarded damages regardless of whether title was established.  For example, in

3 *Citicorp Sav. of Illinois v. Stewart Title Guar. Co.*, 840 F.2d 526 (7th Cir. 1988), a

4 divided panel of the Seventh Circuit held that "[t]ender [of a clear title years later] does

5 not remove the fact that no money would have changed hands but for Stewart Title's

6 mistake." *Id*. at 531.  In essence, the court held that no transaction would have occurred

7 if the defect would have been discovered at the time of the transaction and, thus, the

8 insured lending company was entitled to the amount of the transaction while the title

9 company was "free to sell the property to mitigate its losses." *Id*. at 531.  The lone

10 dissenting judge criticized the majority for ignoring an unambiguous limitation of

11 liability provision that, in his opinion, entitled the insurance company to summary

12 judgment. *Id*. at 531–35 (Coffey, J. dissenting).

13      In light of *Citicorp*, Premier fails to convince the Court that equity trumps black

14 ink.  While Premier may persuade other fair-minded jurists that the limitation of liability

15 provision contains an ambiguity or is trumped by equity, it fails to do so with the

16 arguments presented to the Court.  Thus, although the holding of *Citicorp* is interesting, it

17 is not persuasive authority for interpretation of the Policy under Washington law.

18      Premier also cites *Walker v. Transamerica Title Insurance Co., Inc.*, 65 Wn. App.

19 399 (1992), as "controlling Washington law . . . ."  Dkt. 40 at 11.  It is true that *Walker*

20 controls the determination that breach of the Policy occurred when the transaction was

21 entered into.  *Id*. at 404 n.4.  *Walker*, however, does not control the interpretation of the

22

1  parties' agreement as to a limitation of liability.  Therefore, the Court declines to accept

2  Premier's alternative positions as to damages.

3      Finally, although each party asserts that it is entitled to summary judgment, neither

4  party refers to what claims are currently in dispute.  First American does request that the

5  Court "dismiss plaintiff's claims with prejudice" (Dkt. 43 at 5), but it seems that the only

6  claim in dispute in the current motion is Premier's breach of contract claim.  Thus, the

7  Court requests a joint status report regarding Premier's other claims.

8                                 **IV. ORDER**

9      Therefore, it is hereby **ORDERED** that Premier's motion for summary judgment

10  (Dkt. 32) is **DENIED** and First American's motion for summary judgment (Dkt. 38) is

11  **GRANTED**.  The parties shall file a joint status report as stated herein no later than July

12  10, 2015.

13      Dated this 29th day of June, 2015.

14

15

16  BENJAMIN H. SETTLE
    United States District Judge

17

18

19

20

21

22